IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN M. LEATO; and
LAURINA T. LEATO                                                              PLAINTIFF

V.                              CASE NO. 5:19-cv-05020

WESTERN UNION HOLDINGS, INC.                                         DEFENDANTS

## OPINION AND ORDER

John and Laurina Leato have filed this lawsuit under the diversity of citizenship statute, 28 U.S.C. § 1332. They proceed *pro se* and have sought leave to proceed *in forma pauperis* ("IFP"). The Plaintiffs have brought this lawsuit against Western Union Holdings, Inc. ("Western Union"). Western Union is incorporated in Delaware and has its principal place of business in Colorado. The case is before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2).

### I. BACKGROUND

According to the allegations of the Complaint and attachments thereto, the dispute between Plaintiffs and Western Union is over eight "fraud induced" wire transfers from April 12, 2008, until March 26, 2009, totaling $18,750. All but $500 of this amount was sent to Leonardo Torres in the Republic of Ghana. Plaintiffs do not indicate why they made these wire transfers or who Leonardo Torres is.

Plaintiffs further allege that Western Union owes it for "two counts" of identity theft. They maintain they were victimized "via exposure to scammers and imposter's found in the Western Union fiasco from March 2008, to March of 2018." Plaintiffs have

1

submitted as part of Exhibit B (Doc. 1-2) a copy of a notice dated June 13, 2016, from the Internal Revenue Service stating that it had verified their documents and marked their account with an identity theft indicator. They have also submitted as part of the same exhibit an identical notice dated July 18, 2016.

Plaintiffs allege they have been financially destroyed and on October 31, 2017, had to file Chapter 7 bankruptcy. Plaintiffs allege they listed Western Union on their "debtors list of valid claims" for $18,750 plus damages in the amount of $30,000,000. Plaintiffs allege that Western Union has failed to comply with the bankruptcy court order to pay both the amount of their actual loss and $30 million in damages.[1] Plaintiffs contend they have been given the run-around by Western Union with "all other failed class action efforts."

Plaintiffs allege Western Union has violated the Deceptive Practices Acts of all fifty states; the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"); and the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank").

Plaintiffs also indicate there is a process to submit a claim for remission from a $586 million settlement between Western Union, the Federal Trade Commission ("FTC"), and the Department of Justice. Plaintiffs have attached a notice from the FTC that states:

[A]ccording to the FTC, Western Union has known for years that scammers

---

[1] The documents Plaintiffs have attached from their bankruptcy case only indicate they listed Western Union as a third party they had a potential claim against. (Doc. 1-3 at 3). The exhibit contains no order by the bankruptcy court directing Western Union to make any payment to the Plaintiff.

2

> were using its system to commit significant fraud, Western Union kept taking people's money. Probably billions in fraud-related transfers, since January 2004. But today, in a <u>global settlement with the FTC and the US Department of Justice</u>, Western Union agreed to return $586 million to people and create a strong anti-fraud program.
>
> So, what kind of evidence was Western Union ignoring? Well, says the FTC, from January 2004 to August 2015, the company got more than 550,000 complaints about money transfers made for fraudulent <u>lottery and prizes, family emergency calls, advance-fee loans, online dating</u> and more. There were its own internal reports, which flagged fraud by some of its own agents, including many international agents that paid out fraud-induced transfers from US consumers. And there were warnings from US and international law enforcement about the fraud. And yet, the money kept rolling on through.

(Doc. 1-7 at 1).

A document attached to the Complaint indicates that a "remission process" was set up and a website created, www.westernuntionremission.com. (Doc. 1-6 at 4). According to the website information submitted by the Plaintiffs, the remission fund applied to victims of an

> international consumer fraud scheme. As part of the scheme, fraudsters contacted victims and falsely posed as family members in need or promised prizes or job opportunities. The fraudsters directed victims to send money through Western Union to help their relative or claim their prize. . . . . If you believe you were a victim of the fraud described above and you made a wire tra[n]sfer through Western Union between January 1, 2004, and January 19, 2017, you may be eligible for remission. In order to be considered for a remission payment, you will be required to submit a Remission Form along with any available supporting documentation. Your petition must be filed electronically here or postmarked on or before February 12, 2018, and mailed to: United States v. The Western Union Company, P.O. Box 404027, Louisville, KY 40233-4027.

*Id.* It is not entirely clear whether Plaintiffs have submitted a claim for remission.

## II. DISCUSSION

The Court is obligated to screen an IFP case prior to service of process being

3

issued. A claim is frivolous when it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court bears in mind, however, that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### 1. Illinois Consumer Fraud and Deceptive Business Practices Act

The Consumer Fraud Act[2] makes the use of deceptive trade practices unlawful including causing the "likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." 815 Ill. Comp. Stat. § 510/2. The Consumer Fraud Act provides a cause of action to "any person who suffers actual damages as a result of a violation of this Act." 815 Ill. Comp. Stat. § 505/10a(a).[3] In *De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009), the Illinois Supreme Court said:

> A Consumer Fraud Act claim requires (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception.

---

[2] The Court need not determine whether Illinois or Arkansas law would apply. As will be seen, the result is the same under the law of either state.

[3] Certain provisions of § 505/10a were held to be unconstitutional. The provisions, however, dealt with the handling of claims involving automobile dealers. *See Allen v. Woodfield Chevrolet, Inc.*, 773 N.E.2d 1145 (Ill. App. 2002).

4

*Id.* at 313.

Actual damages means actual pecuniary loss. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citation omitted). "Additionally, the deceptive act must have been the 'but-for' cause of the damage." *Id.* (citation omitted). "The Consumer Fraud Act provides remedies for purely economic injuries." *Morris v. Harvey Cycle and Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. 2009). However, "if the plaintiff has suffered an economic loss, noneconomic injuries are compensable." *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018) (citation omitted). Recoverable damages include the increased risk of identity theft. *In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518, 526-27 (N.D. Ill. 2011). However, identity theft does not itself satisfy the injury requirement. *Id.* Similarly, when the only damages alleged are "emotional distress, inconvenience and aggravation, no cause of action is stated." *Morris*, 911 N.E. 2d at 1053. Here, Plaintiffs allege an actual pecuniary loss in the amount of $18,750 and emotional-distress damages in the amount of $30 million.[4]

Private causes of action under the Consumer Fraud Act are subject to a three-year statute of limitations. 815 Ill. Comp. Stat. 505/10a(e). The cause of action accrues "when the plaintiff knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Chicago Faucet Shoppe, Inc. v. Nestle Waters N.A., Inc.*, 24 F. Supp. 3d 750, 757 (N.D. Ill. 2014) (citation and internal

---

[4] The Court will assume without deciding that the availability of emotional distress damages meets the amount in controversy requirement for diversity jurisdiction. 28 U.S.C.§ 1332(a)(1).

quotation marks omitted).

The date of the last fraudulent act identified by the Plaintiffs is March 26, 2009. The case was filed on February 1, 2019, nearly ten years after the last fraudulent act. With respect to when the Plaintiffs knew or reasonably should have known of the injury and that it was wrongfully caused, the Plaintiffs' Exhibit 1, a transaction report, shows that by no later than January 10, 2013, they were asking for confirmation of the money transfers they had sent via Western Union. Furthermore, they knew or should have known that the money transfers did not produce the result they sought or were not used for their intended purpose. The statute of limitations bars the Plaintiffs' claims under the Consumer Fraud Act.

This claim is subject to dismissal.

## 2. Arkansas Deceptive Trade Practices Act

The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101 *et seq.*, makes it unlawful to engage in any "unconscionable, false, or deceptive act or practice in business, commerce or trade." Ark. Code Ann. § 4-88-107(a)(10). Enforcement rests largely with the Attorney General, Ark. Code Ann. § 4-88-113(a)-(e).

However, the ADTPA does provide "a private right of action to 'any person' who suffers actual damage or injury as a result of a violation of the Act." *Crutchfield v. Tyson Foods, Inc.*, 514 S.W.3d 499, 503 (Ark. Ct. App. 2017); Ark. Code Ann. § 4-88-113(f). "The elements of such a cause of action are (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *Skalla v. Canepari*, 430 S.W.3d 72, 82 (Ark. 2013).

In *Wallis v. Ford*, 208 S.W.3d 153, 161 (Ark. 2005), the Arkansas Supreme Court held that the ADTPA applies only when a party suffers actual damages and there is no cognizable cause of action for any other type of recovery, such as diminution in value. Specifically, *Wallis* declined to rule that the ADTPA provided a private cause of action for "any ascertainable loss." *Id.* For plaintiffs to recover damages for mental anguish, they must have suffered a physical injury or allege that the defendants "violated the provisions of [the ADTPA] with the intent to cause them mental distress or that they suffered a physical injury." *FMC Corp., Inc. v. Helton*, 202 S.W.3d 490, 503 (Ark. 2005).

Claims under the ADTPA are subject to a five-year statute of limitations. Ark. Code Ann. § 4-88-115. As noted above, the date of the last allegedly fraudulent act identified by the Plaintiffs is March 26, 2009. The statute of limitations commences on the "date of the occurrence of the violation or the date upon which the cause of action arises." Although fraud can toll or suspend the statute of limitations, "the suspension remains in effect only until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence." *Bank of America, N.A. v. JB Hanna, LLC*, 766 F.3d 841, 855 (8th Cir. 2014).

The case was filed on February 9, 2019, more than five years after the last fraudulent act. As discussed above, the statute of limitations began to run no later than 2013. With respect to when the Plaintiffs discovered or should have discovered the fraud, the Plaintiffs' Exhibit 1, a transaction report, shows that no later than January 10, 2013, they were aware of the details of each transaction including to whom and where the money was wired. Further, Plaintiffs through the exercise of due diligence should

have known that the money transfers were not applied in the way they sought or did not result in the intended benefit. The statute of limitations bars the Plaintiffs' claims under the ADTPA, and it is subject to dismissal.

### 3. Dodd-Frank

Dodd-Frank authorizes the Consumer Financial Protection Bureau ("CFPB") to prevent "unfair, deceptive, or abusive act[s] or practice[s] . . . in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." 12 U.S.C. § 5531(a). It also makes it unlawful for a "covered person or service provider . . . to engage in unfair, deceptive, or abusive act[s] or practice[s]." 12 U.S.C. § 5536(a)(1)(B). Authority to litigate violations of the consumer protection provisions is left to the CFPB. 12 U.S.C § 5564(a). *See also Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 472 (E.D.N.Y. 2015). Thus, Plaintiffs have no private right of action that may be asserted in this Court under Dodd-Frank.

### III. CONCLUSION

For the reasons stated, the claims asserted are subject to dismissal on the grounds they are frivolous, fail to state claims upon which relief may be granted, or are barred by the statute of limitations. Therefore, this case is **DISMISSED WITHOUT PREJUDICE**.

The IFP motions (Docs. 3 & 6) are **DENIED AS MOOT**.

**IT IS SO ORDERED** on this 5th day March, 2019.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE